**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-7914**

MARK E. LEE,

                    Petitioner - Appellant,

          v.

HAROLD W. CLARKE, Director, Department of Corrections,

                    Respondent - Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond.   Henry E. Hudson, District
Judge.   (3:13-cv-00251-HEH)

Argued:  December 10, 2014          Decided:  March 20, 2015

Before MOTZ, GREGORY, and WYNN, Circuit Judges.

Reversed and remanded by published opinion.  Judge Gregory wrote
the opinion, in which Judge Motz and Judge Wynn joined.

**ARGUED:** David Bernard Hargett, HARGETT LAW, PLC, Glen Allen,
Virginia, for Appellant.  Leah A. Darron, OFFICE OF THE ATTORNEY
GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.  **ON
BRIEF:** Mark R. Herring, Attorney General, OFFICE OF THE ATTORNEY
GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

GREGORY, Circuit Judge:

Mark E. Lee ("Lee") appeals the district court's order granting the motion of the Director of the Virginia Department of Corrections ("Director") to dismiss his petition for a writ of habeas corpus. We issued a certificate of appealability to address Lee's claim that his trial counsel provided ineffective assistance by failing to request a jury instruction defining heat of passion. We find that the state habeas court's decision was based on an unreasonable application of clearly established federal law set forth in Strickland v. Washington, 466 U.S. 668 (1984), in that the court failed to appreciate the prejudice inherent in the absence of a jury instruction defining heat of passion given that the undisputed facts demonstrate that the instruction was crucial to Lee's defense. We therefore reverse the district court's order of dismissal and remand with instructions that it issue Lee a writ of habeas corpus unless the Commonwealth of Virginia endeavors to prosecute him in a new trial within ninety days.

I.

A.

On September 16-17, 2008, Lee was tried by a jury in the Circuit Court for the City of Richmond on a charge of first degree murder in connection with the stabbing of a man named

2

Thomas Plummer. According to the testimony of William Gormley, a forensics pathologist and an assistant chief medical examiner with Virginia's Department of Health, Plummer suffered from "a total of seven inflicted sharp force injuries," but he ultimately died as a result of "two fairly large stab wounds on his chest." J.A. 64.[1]

The prosecution presented the testimony of a man named Jarrell Drayton. Drayton testified that in the early afternoon on April 9, 2008, he was outside on the 3100 block of Enslow Avenue in Richmond, Virginia. He stated that he was speaking with some people when he saw Plummer walking up the street. Drayton also observed a burgundy truck, in which Lee was a passenger, drive onto the 3100 block of Enslow Avenue. According to Drayton, Lee "looked at [Plummer] funny." J.A. 81. When asked to elaborate, Drayton stated only that Lee "turned his face upside down." J.A. 81.

Plummer walked over to Drayton and his acquaintances and asked for a gun. The truck was "[a] couple of steps" away, and the window was rolled up. J.A. 82. When nobody produced a gun, Plummer walked over to the truck and told Lee to get out. Drayton stated that Plummer "was ready to fight," and that when Lee got out of the truck, Plummer "moved right up on him." J.A.

---

[1] "J.A." refers to citations to the joint appendix filed by the parties in this case.

3

83. Drayton testified that Plummer struck Lee in the face, and that he observed blood coming from Lee's eye. Drayton thought Plummer struck Lee at most six times, but he was unsure. As Plummer and Lee were fighting, Drayton heard Plummer yell "he stabbed me." J.A. 84. Plummer then advanced "up the street holding his chest," but Lee approached from behind and the two began fighting again. Drayton first stated that Plummer was again stabbed in the chest, but later admitted that he was not sure where on Plummer's body the blow landed. Plummer ran around a car and Lee continued to pursue him, but Drayton and another individual intervened and told Lee to leave Plummer alone. Drayton heard Lee state "I'm tired of him" and "I'm gonna kill him," before running from the scene. J.A. 85-87. Drayton did not know where Lee went afterward. Plummer collapsed and later died.

After Drayton's testimony, the prosecution rested its case. Lee's trial counsel then made a motion to strike the first degree murder charge and to proceed instead on a second degree murder charge, arguing that the Commonwealth had failed to show premeditation. He also moved to proceed on a manslaughter charge alone, arguing that there was no evidence of malice given that Plummer provoked Lee by striking first. J.A. 111-13 ("[W]hen there is an assault on the defendant, and he is provoked through that assault through no fault of his own, then

4

that negates the element of malice, which is required for a murder conviction." (citing <u>Moxley v. Commonwealth</u>, 77 S.E.2d 389 (Va. 1953), and <u>Wilkins v. Commonwealth</u>, 11 S.E.2d 653 (Va. 1940)). The prosecutor responded that "[i]f the defendant, after having been struck, had defended himself quickly with a knife and the fight would have terminated, then I would have brought [the court] a manslaughter case." J.A. 114. He went on to characterize Drayton's testimony:

> The truth is the fight was over, the man had been stabbed in the chest, he retreated, he backed off, "I've been stabbed," at which point we are pursuing first degree murder, because this defendant then, after having stabbed the man once, pursued the man, stabbed him again, either got him in the heart or in the liver, and specifically said loud enough for everyone to hear: "I'm going to kill him." And then even after they told him, "leave him alone," he chased him down and stabbed him again.
>
> The Court is well aware, willful, deliberate, and premeditated [intent] can be formed in the blink of an eye, and when you say, "I'm going to kill him," you have reached the standpoint of first degree murder.

J.A. 114.

Lee's trial counsel argued there might not have been a cooling off period between the two stabbings. However, the trial court denied the motions, stating, "[t]he court believes the jury viewing the evidence in the light most favorable to the Commonwealth will have sufficient evidence of malice, and that evidence will include the defendant's statement." J.A. 115.

5

B.

Trial counsel then presented Lee's case to the jury, in the form of testimony from Lee and Lee's friend, Reginald Davis. Lee testified that he and Plummer had an argument the Friday prior to Plummer's killing. In particular, Lee testified that the two men were at the Salvation Army when Plummer "approached [him] about some rumors he had heard." J.A. 126. Lee denied knowledge of the rumors, "[a]nd then [Plummer] pushed [him] into a lamp on a table at the Salvation Army. And the houseman at the Salvation Army . . . put [them] both out that day." J.A. 126.

The following Wednesday, April 9, 2008, Davis was driving down Enslow looking for men to help pick up trash and do some other work for a friend. Davis saw Lee and pulled over to let him into his truck so they could discuss the work. As they were talking, Lee spotted Plummer outside. Davis testified that Plummer passed by the truck, and then returned to speak to Lee. Davis stated that Lee "said something along the line . . . you got us kicked out of that place." J.A. 119. Plummer "had this look in [sic] his face like he wanted to start fighting again," and Lee urged Plummer to "let it go." J.A. 127. Plummer then told Lee to get out of the truck, but before he could exit, Plummer began punching him through the window. Plummer struck him in the face about the eye and his glasses. Lee stated that

6

his "eye just started spitting out blood." J.A. 127. Lee testified that Plummer pulled him out of the truck, and he fell to one knee. Plummer "was over top of [Lee] beating [him], and [Lee] was throwing [his] hand up to try to . . . get up on [his] feet, and [Plummer] just kept on hitting [Lee] in [his] head." J.A. 129.

Lee drew a pocket knife,[2] swung it at Plummer, and then heard Plummer say, "He stabbed me." J.A. 131. Lee admitted that he then stated, "Man you knocked my eye out. Man I'm gonna kill this nigga." J.A. 131. By then, Plummer was across the street yelling for someone to give him a gun. Lee testified that he did not pursue Plummer or engage in additional fighting. Instead, other individuals in the area told Lee to leave, and he did so.

Davis did not see the stabbing. Rather, Davis exited the truck from the driver's side once the fight began, but when he got to the passenger side, Lee and Plummer "were coming off the ground." J.A. 120. Davis observed Plummer running away "holding his upper torso [and] saying, 'I can't believe I've been stabbed.'" J.A. 120. Davis then returned to his truck and drove away. He testified that he did not see a knife in Lee's hand at any point, and that he was unaware that Lee was armed.

---

[2] Lee testified that he had the knife because he used it for his manufacturing job.

C.

At the close of all testimony, Lee's trial counsel again moved to strike the murder charges and proceed solely on manslaughter. Counsel argued that there was sufficient evidence of provocation, and also that the Commonwealth had failed to prove premeditation beyond a reasonable doubt. The trial court rejected trial counsel's arguments, stating that there were credibility determinations that must be put to the jury. The court stated also:

> The statement of the intent can incur [sic] after the forming of the intent, and that's a jury issue. The fact that the expression of the, I intend to kill him, was after one or two of the wounds is not relevant. The issue is when the intent was formed, not when it was stated, not when it was expressed.

> And I have read, too, the instruction on malice. I've read the instructions that have been offered without objection, and they are the law of the case and based on this law and the evidence before the Court, there are a number of jury issues. The Court is not going to take this matter away from the jury.

J.A. 147.

The trial court asked both counsel to look at the instructions; neither party objected to the instructions or proposed any corrections or additions. The court thus read the instructions to the jury. Among them were:

- **Instruction No. 3,** in relevant part,

> If you find the Commonwealth has failed to prove beyond a reasonable doubt that the killing was malicious but that the Commonwealth has proved beyond

8

a reasonable doubt that the defendant killed Thomas Plummer, and further: (1) [t]hat the killing was the result of an intentional act; and (2) [t]hat the killing was committed while in the sudden heat of passion upon reasonable provocation[,] [t]hen you shall find the defendant guilty of voluntary manslaughter . . . .[3]

- **Instruction No. 4,** in full,

  "Willful, deliberate, and premeditated" means a specific intent to kill adopted at sometime before the killing, but which need not exist for any particular length of time.

- **Instruction No. 5,** in full,

  Malice is that state of mind which results in the intentional doing of a wrongful act to another without legal excuse or justification, at a time when the mind of the actor is under the control of reason. Malice may result from any unlawful or unjustifiable motive including anger, hatred or revenge. Malice may be inferred from any deliberate willful and cruel act against another, however sudden.

- **Instruction No. 6,** in full,

  You may infer malice from the deliberate use of a deadly weapon unless, from all the evidence, you have a reasonable doubt as to whether malice existed. A deadly weapon is any object or instrument, not part of the human body, that is likely to cause death or great bodily injury because of the manner and under the circumstances in which it is used.

- **Instruction No. 7,** in relevant part,

  You have been instructed on more than one grade of homicide and if you have a reasonable doubt as to the grade of the offense, then you must resolve that doubt in favor of the defendant, and find him guilty of the lesser offense.

---

[3] The omitted portion of Instruction No. 3 provides the elements of first and second degree murder. J.A. 196.

9

- **Instruction No. 8,** in full,

     The difference between murder and manslaughter is malice. When malice is present the killing is murder. When it is absent, the killing can be no more than manslaughter.

- **Instruction No. 9,** in full,

     Once the Commonwealth has proved there was an unlawful killing, then you are entitled to infer there was malice and that the act was murder in the second degree unless, from all the evidence, you have a reasonable doubt as to whether malice existed.

See J.A. 194-207.

Instruction No. 5 included the first paragraph of the Virginia model instruction on malice and heat of passion. Neither party requested the full model instruction, which includes a definition of heat of passion, as well as a discussion of the "cooling" of passion:

     Malice is that state of mind which results in the intentional doing of a wrongful act to another without legal excuse or justification, at a time when the mind of the actor is under the control of reason. Malice may result from any unlawful or unjustifiable motive including anger, hatred or revenge. Malice may be inferred from any deliberate, willful, and cruel act against another, however sudden.

     **Heat of passion excludes malice when that heat of passion arises from provocation that reasonably produces an emotional state of mind such as hot blood, rage, anger, resentment, terror or fear so as to demonstrate an absence of deliberate design to kill, or to cause one to act on impulse without conscious reflection. Heat of passion must be determined from circumstances as they appeared to defendant but those circumstances must be such as would have aroused heat of passion in a reasonable person.**

10

**If a person acts upon reflection or deliberation, or after his passion has cooled and there has been a reasonable time or opportunity for cooling, then the act is not attributable to heat of passion.**

J.A. 253 (2-33 Virginia Model Jury Instructions – Criminal Instruction No. 33.220) (omitted portions in bold).

During closing arguments, Lee's counsel attempted to distinguish malice and heat of passion for the jury. He stated: "You cannot at the same time have malice, which is required for both first and second degree murder, and heat of passion, provocation. The two are what they called [sic] mutually exclusive. You cannot have them both present at the same time." J.A. 157; see also J.A. 161 ("If you find the force was too much, he didn't need to take that knife at that point, but that Mark Lee was provoked into that killing, that negates that malice element that we've been talking about. That's a manslaughter.").

During its deliberations, the jury contacted the court three times. First, the jury sent a note indicating that it was unable to reach a unanimous verdict, and the court responded by giving an Allen charge.[4] The second time, the jury requested a

---

[4] "An Allen charge, based on the Supreme Court's decision in Allen v. United States, 164 U.S. 492 (1896), is '[a]n instruction advising deadlocked jurors to have deference to each other's views, that they should listen, with a disposition to be convinced, to each other's argument.'" United States v. Burgos, (Continued)

11

clarification of the definition of premeditation. The court informed the jury that Instruction No. 4 was the only legal definition of willful, deliberate, and premeditated that was available, and thus re-read that instruction. Finally, the jury contacted the bailiff and indicated that it was still unable to reach a unanimous verdict. The court thus gave both an <u>Allen</u> charge and re-read Instruction No. 7. Neither counsel objected to the court's instructions and responses to the jury's questions. Sixteen minutes after the last set of instructions, the jury returned with a unanimous verdict of second degree murder.

Trial counsel made an oral motion to set aside the verdict, arguing that the evidence of malice for second degree murder was insufficient. The court summarily denied the motion, and the jury later sentenced Lee to the maximum sentence of 40 years' imprisonment.

### D.

On direct appeal, Lee again argued that there was insufficient evidence of malice to sustain his second degree murder conviction. In upholding the conviction, the Court of Appeals of Virginia framed "the issue [as] whether, after

_____

55 F.3d 933, 935 (4th Cir. 1995) (quoting <u>United States v. Seeright</u>, 978 F.2d 842, 845 n.* (4th Cir. 1992)).

viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." J.A. 33 (internal quotation marks and citation omitted). The court thus credited Commonwealth witness Drayton's testimony and found that a jury could have concluded that Lee acted with malice. Lee's subsequent appeal to the Virginia Supreme Court was denied.

Lee thereafter, with the help of new counsel, filed a state habeas petition in the Circuit Court for the City of Richmond, alleging that his trial counsel was ineffective due to his failure to request a heat of passion jury instruction.[5] After a motions hearing, the court granted the Commonwealth's motion to dismiss Lee's habeas petition. In its written order, the court stated:

> [T]he Court finds, upon review of the trial record, no reasonable probability that but for the lack of request of counsel for a jury instruction [on] the definition of the heat of passion . . . [the outcome of trial] would have been different. The Court concurs with the argument of the [Respondent] with regard to the testimony of the witnesses as well as

---

[5] Lee additionally alleged ineffective assistance of counsel for failing to advise him to take a plea offer. The court denied the claim and, although Lee appealed that ruling in his federal habeas petition filed in the Eastern District of Virginia, this Court granted Lee a certificate of appealability only as to his claim of ineffective assistance of counsel for failure to request the heat of passion instruction.

13

> the guidance . . . one can infer with regard to jury deliberation [on] th[e] issue of malice.

J.A. 295 (internal quotation marks and citations omitted) (alterations in original). The court noted in its opinion that Lee had not requested an evidentiary hearing concerning his heat of passion claim.[6] The Supreme Court of Virginia denied Lee's subsequent appeal.

Lee next filed a federal habeas petition in the Eastern District of Virginia. He argued again he received ineffective assistance of counsel as a result of his trial counsel's failure to request a jury instruction defining heat of passion.[7] Relying on "[t]he Court of Appeals of Virginia[']s apt[] summar[y] of the evidence of Lee's guilt" as set forth in the state court opinion denying Lee's direct appeal, J.A. 300, the district court denied Lee's federal habeas petition and denied a certificate of appealability. In particular, the district court stated that jurors knew from Jury Instruction No. 3 "that if Lee killed Plummer in the heat of passion upon reasonable provocation they should only find him guilty of voluntary manslaughter." J.A. 302-03. The district court also concluded that the weight of the evidence against Lee was such that a heat

---

[6] Lee did request an evidentiary hearing for his claim concerning the plea offer, but the court denied his request.

[7] Lee also advanced his claim concerning the plea offer. As noted earlier, only Lee's heat of passion instruction claim is at issue in this appeal.

14

of passion instruction would not have changed the outcome of his trial.

Lee filed an informal pro se appeal. This Court granted a certificate of appealability and appointed counsel. This appeal followed.

II.

"We review de novo a district court's denial of habeas relief based on a state record." Tucker v. Ozmint, 350 F.3d 433, 438 (4th Cir. 2003). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts may not grant a petitioner's habeas petition where the state court adjudicated the petitioner's habeas claims on the merits unless the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "In reviewing a state court's ruling on post-conviction relief, we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker, 350 F.3d at 439 (quoting 28 U.S.C. § 2254(e)); see also Lindh v. Murphy, 521

15

U.S. 320, 333 n.7 (1997) (referring to § 2254(d) as a "highly deferential standard for evaluating state court rulings").

We review claims based on ineffective assistance of counsel under the familiar two-part standard set forth in Strickland. A claimant must show first, that his counsel's conduct "fell below an objective standard of reasonableness," and second, that he was prejudiced as a result of counsel's conduct. Strickland, 466 U.S. at 688. When reviewing ineffective assistance claims, courts "must consider the totality of the evidence before the judge or jury." Id. at 695. As to counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689. As to prejudice, a claimant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." Id. And, "[i]n cases where a conviction has been the result of a trial, the defendant must demonstrate that but for counsel's errors, there is a reasonable probability that he would not have been convicted." United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).

16

Finally, we note that "when a petitioner's habeas corpus claim is based on alleged ineffective assistance of counsel . . . . [t]he AEDPA standard and the Strickland standard are dual and overlapping, and we apply the two standards simultaneously rather than sequentially."  Richardson v. Branker, 668 F.3d 128, 139 (4th Cir. 2012) (citing Harrington v. Richter, --- U.S. ---, 131 S. Ct. 770 (2011)).  Because both standards of review are "'highly deferential' to the state court's adjudication . . . , 'when the two apply in tandem, the review is doubly so.'"  Id. (citing and quoting Richter, 131 S. Ct. at 788).

III.

A.

Lee contends that any reasonably competent attorney would have requested the Virginia jury instruction defining heat of passion.  The Director does not argue that the failure to request the instruction was not deficient, and the state habeas court did not address ineffectiveness in its Strickland analysis.  While we do not today set forth the only circumstance in which a heat of passion instruction is required, it is clear from the testimony that arose during Lee's trial that a competent attorney would have requested the instruction in this case.

17

"Virginia has long recognized that malice and heat of passion cannot coexist.  Proof of malice excludes the presence of passion, and proof of passion presupposes the absence of malice."  Hodge v. Commonwealth, 228 S.E.2d 692, 697 (Va. 1976) (citing Brown v. Commonwealth, 10 S.E.2d 745, 747-48 (Va. 1890)).  As the Virginia Supreme Court has stated,

> [i]n a given situation, the accused, without producing evidence, may be entitled to an instruction on manslaughter, or even to a verdict on that lesser charge, if it can reasonably be inferred from the Commonwealth's evidence that he acted in the heat of passion.  Where the Commonwealth's evidence does not permit such an inference, however, the burden of production shifts to the accused.  But when he produces some credible evidence that he acted in the heat of passion, he is entitled to an instruction on manslaughter and also, if the evidence as a whole raises a reasonable doubt that he acted maliciously, to a verdict on the lesser charge of homicide.

Id. (citing McClung v. Commonwealth, 212 S.E.2d 290, 293 (Va. 1975)).

Here, Lee "produce[d] some credible evidence that he acted in the heat of passion," and was therefore "entitled to an instruction on manslaughter."  Hodge, 228 S.E.2d at 697. Indeed, there was undisputed testimony at trial from both the Commonwealth and the defense that Plummer struck first, beating Lee about his face several times and drawing blood.  There was no finding by the state trial court that any witness's testimony was not credible.  Rather, because other facts were in dispute, the trial court correctly put the matter to the jury.

18

Critically, however, the jury was never provided with a complete definition of heat of passion. But where, as here, there is ample evidence of heat of passion, an instruction on manslaughter is ineffective if not accompanied by an instruction defining heat of passion. See Belton v. Commonwealth, 104 S.E.2d 1, 4 (Va. 1958). In Belton, the Virginia Supreme Court found that the trial court committed reversible error by refusing, among other errors, to give the jury an instruction "on the distinction between malice and passion." Id. The court stated that "[t]here [was] evidence in the record tending to support" the defendant's theory that he shot and killed his wife in the heat of passion during an argument in which she first taunted him about her relationships with other men and then hit him. Id. The court went on to note that not only was an instruction on the law of voluntary manslaughter necessary, but also an instruction distinguishing heat of passion from malice. Id. at 4-5; cf. Arnold v. Commonwealth, 560 S.E.2d 915, 918-19 (Va. Ct. App. 2002) ("While it is true that '[m]alice and heat of passion are mutually exclusive,' we have held that where it is not the victim of the crime who invoked the defendant's heat of passion, there was no evidence to support a [jury instruction or] finding of heat of passion." (footnotes omitted)). Because "malice and heat of passion cannot coexist," Hodge, 228 S.E.2d at 697, it follows that the jury must be appropriately apprised

19

of the legal definition of each, at least in cases like this where it is undisputed that the passion was provoked by the victim.

There is certainly a question concerning whether Lee, after stabbing Plummer once, pursued him a second time. But under the facts here, the discrepancy does not diminish the importance of the heat of passion instruction. Generally,

> whether provocation, shown by credible evidence, is sufficient to engender the [f]uror brevis necessary to rebut the presumption of malice arising from a homicide is a question of fact. Only when the trial court, giving the defendant the benefit of every reasonable inference from the evidence, can say that the minds of reasonable men could not differ does the question become a question of law. Subject to the same standards, it is also a question of fact whether the defendant committed the homicide before or after his passion had cooled.

McClung, 212 S.E.2d at 292 (internal citation omitted). Put differently, not only is the sufficiency of provocation a question of fact for the jury, but also the question of when any passion stirred by the provocation cooled. Here, assuming that Lee pursued Plummer a second time, there was very little time between the two fighting incidents. The Virginia Supreme Court has found it appropriate to issue a cooling instruction for much longer cooling off periods than that potentially present here. See Potter v. Commonwealth, 283 S.E.2d 448, 450 (Va. 1981) (discussing cooling off instructions given in cases involving twenty-four hours, three hours, and two years between

20

provocation and killing). Moreover, regardless of whose testimony is believed and contrary to what the Director appears to argue in his brief, Lee made the statement that he was going to kill Plummer <u>after</u> the fighting had ceased. Thus, even though the malice necessary for a finding of second degree murder can be "'implied from any deliberate or cruel act against another, however sudden,'" <u>Thomas v. Commonwealth</u>, 41 S.E.2d 476, 480 (Va. 1947) (citing <u>Scott v. Commonwealth</u>, 129 S.E. 360, 363 (Va. 1925)), there would remain, under the facts of this case, "a question of fact whether the defendant committed the homicide before or after his passion had cooled," <u>McClung</u>, 212 S.E.2d at 292.

Finally, we note that "strategic choices must be respected . . . if they are based on professional judgment." <u>Strickland</u>, 466 U.S. at 681. But here, Lee's trial counsel in a May 25, 2011 letter stated that "[t]here was no strategic reason for the omission of the instruction." J.A. 271.

Because Lee's trial counsel had no strategic reason for failing to request the heat of passion jury instruction, and because it was error to fail to do so in any event under the facts of this case, we find that Lee has satisfied the first prong of the <u>Strickland</u>/AEDPA test.

21

B.

We turn now to the issue of prejudice. To determine whether Lee satisfied the prejudice prong of Strickland, the state habeas court was required to consider the "totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695. In conducting its analysis, it agreed with and adopted the arguments made by the Commonwealth. J.A. 295 ("The [state habeas] Court concurs with the argument of the [Respondent] with regard to the testimony of the witnesses as well as the guidance . . . one can infer with regard to the deliberation [on] th[e] issue of malice." (first alteration added)); see also J.A. 264-66 (Commonwealth's memorandum of law before state habeas court).

In reviewing the state habeas court's conclusions, "[o]ur inquiry regarding the prejudice prong is twofold:  (1) whether the instruction, if requested, should have been given; and (2) if the instruction had been given, was there a reasonable probability that the outcome of the proceedings would have been different." Luck, 611 F.3d at 189. We answer both of these questions in the affirmative. As explained below, the undisputed testimony that Plummer struck Lee first demonstrates that the state habeas court's Strickland analysis fails to perceive the prejudice created by the lack of a definitional heat of passion instruction.

22

First, if requested, the trial court should have given the complete heat of passion instruction. As discussed at length above, Lee produced evidence of provocation and heat of passion. The Commonwealth's witness, Drayton, also testified that Plummer provoked Lee. Accordingly, Lee was entitled not only to an instruction on manslaughter, which he received, but also to an instruction defining heat of passion. See Belton, 104 S.E.2d at 4-5 (finding that where victim hit defendant during an argument, trial court should have given instruction distinguishing heat of passion from malice); Hodge, 228 S.E.2d at 697 (stating that a defendant is entitled to an instruction on manslaughter if he produces "some credible evidence that he acted in the heat of passion"); Arnold, 560 S.E.2d at 918-19 (finding that it was not error for trial court to refuse to give heat of passion instruction where defendant failed to produce evidence of heat of passion). Notably, the trial court made no finding that there was insufficient evidence to support a heat of passion defense.

To address the second question, we look to the importance of the instruction under the facts of this case. The Director argues that the lack of a heat of passion instruction could not have been prejudicial because Lee's trial counsel discussed heat of passion during his closing arguments. This is incorrect. As an initial matter, it is well established that "arguments of

23

counsel generally carry less weight with a jury than . . . instructions from the court." Boyde v. California, 494 U.S. 370, 384 (1990) (stating that arguments of counsel "are usually billed in advance to the jury as matters of argument, not evidence . . . and are likely viewed as the statements of advocates," while jury instructions from the court, "we have often recognized, are viewed as definitive and binding statements of the law"). To be sure, "[j]urors are not lawyers; they do not know the technical meaning" of legal terms such as heat of passion. See Carter v. Kentucky, 450 U.S. 288, 303 (1981). Accordingly, "[t]he other trial instructions and arguments of counsel that the . . . jurors heard at the trial" cannot "substitute for [an] explicit instruction." Id. at 304 ("[M]ost certainly, defense counsel's own argument that the petitioner 'doesn't have to take the stand . . . [and] doesn't have to do anything' cannot have the purging effect that an instruction from the judge would have had." (second alteration in original)); see also Muhammad v. Warden of Sussex I State Prison, 646 S.E.2d 182, 194 (Va. 2007) ("It is presumed that a jury will follow the instructions given by the trial court."). A court issued jury instruction carries the command and force of law in a way that a statement by counsel cannot, and thus prejudice that arises from a flawed or omitted jury instruction is not cured by mere argument.

Moreover, here, trial counsel attempted to distinguish malice and heat of passion without once setting forth or otherwise explaining the full force of Virginia's model instruction defining heat of passion. He repeatedly stated that heat of passion negates malice but did not describe heat of passion itself. He never informed jurors that "[h]eat of passion must be determined from circumstances as they appeared to the defendant." J.A. 253. And perhaps most important, he failed entirely to explain that, under the law of Virginia, the same emotions that can serve as the basis for malice can also serve as the basis for heat of passion. Compare Barrett, 341 S.E.2d at 192 ("Heat of passion . . . may be founded upon rage, fear, or a combination of both." (emphasis added) (citations omitted)), and J.A. 253 (model instruction defining heat of passion as arising from "hot blood, rage, anger, resentment, terror or fear" (emphasis added)), with Thomas, 41 S.E.2d at 480 ("Malice . . . includ[es] not only anger, hatred and revenge, but every other unlawful and unjustifiable motive." (emphasis added)), and J.A. 199 (Instruction No. 5, stating malice can arise from "anger, hatred or revenge" (emphasis added)).

The facts in this case expose the consequences of trial counsel's omission. It cannot be overemphasized that, according to both Commonwealth and defense witnesses, Plummer struck Lee first such that Lee was bleeding from his head or his eye.

25

There can be no serious doubt that such an attack would engender anger, rage, fear or similar emotions. Thus, the principal prejudicial factor lies in the manner in which the legal import of these emotions was framed for the jury. The jury was well aware that "[m]alice may result from any unlawful or unjustifiable motive including anger, hatred or revenge." J.A. 199 (Instruction No. 5). But it was never told, in any fashion, that if a reasonable person, when provoked, felt "rage, anger, [or] resentment," then the jury could find instead that that person was acting in the heat of passion. J.A. 253 (model instruction defining heat of passion); see also Barrett, 341 S.E.2d at 192. Put differently, the jury was given to understand "anger, hatred or revenge" as exclusively "unlawful or unjustifiable motive[s]." J.A. 199 (Instruction No. 5). It was not presented the option of applying the law of heat of passion -- that is, the option of concluding that anger, rage, or hatred arose from anything other than malice. Absent that option, the state trial court, through trial counsel's failure to request the heat of passion instruction, deprived the jury of any legal avenue to find Lee guilty of manslaughter as opposed to second degree murder on the facts of this case. Trial counsel further compounded the problem by failing to explain during his closing argument that heat of passion and malice can arise from similar emotions.

26

The state habeas court turned a blind eye to this reality in accepting Lee's trial counsel's brief and incomplete discussion of heat of passion as sufficient to overcome the prejudice in this case. Put simply, and upon consideration of the totality of the evidence before the trial court, trial counsel's closing argument could not carry the day. Trial counsel did not define heat of passion for the jury. He did not explain that anger or rage could legally signify either heat of passion or malice. He did not reiterate for the jury that a finding that Lee's anger or rage was attributable to heat of passion would completely supplant a finding that his anger or rage was attributable to malice. By failing to make plain to the jury that it had a legal choice between anger qua malice and anger qua heat of passion, trial counsel's closing argument failed to remedy the lack of a jury instruction defining heat of passion. In any event, and as discussed above, it would matter little whether trial counsel's closing argument had been more adequately presented, because it was not supported by "definitive and binding statements of the law" in the form of jury instructions. <u>Boyde</u>, 494 U.S. at 384. This was prejudicial. The state habeas court unreasonably applied <u>Strickland</u> in concluding otherwise, even when its conclusion is considered through the deferential lens of AEDPA. Instead, with

27

only what little argument was offered, and without the heat of passion instruction, Lee suffered prejudice.

The Director also urges the Court that there was no prejudice because "it is evident from the jury's deliberations that the jury did not believe the petitioner's testimony and the jury's attention was focused on whether Lee acted with premeditation." Appellee's Br. 19. But as the Virginia Supreme Court very recently stated, "[a] question posed to the court during deliberations . . . could suggest as little as the tentative views of a single juror. It cannot be extrapolated into a binding finding by the jury as a whole." Dominguez v. Pruett, 756 S.E.2d 911, 915 (Va. 2014) (internal citation and quotation marks omitted). Here, for example, it is possible that the question arose because a single juror was in favor of first degree murder, while some or all of the remaining jurors were in favor of second degree murder. And, for the reasons discussed above, there is a reasonable probability that the jurors were in favor of second degree murder only because they were never apprised of the definition of heat of passion.

Our conclusion is further bolstered by Virginia Supreme Court cases suggesting a reasonable probability that the outcome of Lee's trial would have been different had the heat of passion instruction been given. For example, in Barrett v. Commonwealth, two men were involved in a fistfight. 341 S.E.2d

28

190, 192 (Va. 1986). The loser of the fight, Gilchrist, "threatened Barrett, stating their next fight 'wouldn't be with fists.'" Id. Barrett was fearful because Gilchrist had a reputation for carrying a gun. Id. Later, Barrett was walking with a friend when he encountered Gilchrist again. Barrett's friend testified that he saw Gilchrist pull out a gun. When the friend yelled a warning, Barrett pulled out his own gun and shot Gilchrist.[8] The Virginia Supreme Court held that "a jury reasonably could find from the evidence that Barrett did not act maliciously, but acted upon reasonable provocation, in the heat of passion induced by fear." Id. at 193. Here, it was undisputed that Plummer initiated the fight by punching Lee in the face. Given these facts, and given the standard announced in Barrett, there is a reasonable probability that a jury would find that Lee acted upon reasonable provocation in heat of passion when he swung his pocket knife at Plummer.[9]

---

[8] Barrett was convicted only of malicious wounding. However, "[b]ecause the mental-state elements of unlawful wounding are the same as those of voluntary manslaughter, [the Virginia Supreme Court] . . . examine[d] homicide law" in resolving the case. Barrett, 341 S.E.2d at 192.

[9] Despite the unanimous testimony that Plummer initiated the fight by striking Lee in the face, the Director argues that Lee provoked Plummer by "making a derogatory facial expression" at Plummer and verbally blaming Plummer for the incident at the Salvation Army. Appellee's Br. 16-17. Even if such actions were to blame for the ensuing physical altercation, there is a factual issue as to whether Lee or Plummer made a face and spoke first. Compare J.A. 81, 83 (Drayton's testimony that Lee (Continued)

Also illustrative is another case, Callahan v. Commonwealth, 63 S.E.2d 617 (Va. 1951), in which a jury found the defendant guilty of voluntary manslaughter. There, the defendant and the deceased were arguing near the entrance to a cafe. Id. at 618. Witnesses for the Commonwealth testified that the deceased left the entrance and walked toward the defendant, at which point the defendant fired a pistol at the deceased's feet. Id. The deceased continued walking toward the defendant, and the defendant then fired two more shots, killing the deceased. Id. The defendant's witnesses, on the other hand, testified that the deceased threatened the defendant both verbally and with a knife, and that the defendant subsequently fired the warning shot and the fatal shots. Id. The jury was instructed on not only manslaughter, but also first and second degree murder, and returned a verdict for voluntary manslaughter. Id. at 619-20. The Virginia Supreme Court affirmed the conviction. While a heat of passion instruction was not directly at issue in Callahan, it is noteworthy that the jury convicted the defendant of voluntary manslaughter despite conflicting evidence about provocation. In this case, there is evidence of provocation from both the Commonwealth and Lee. It

"looked at [Plummer] funny" and that Plummer told Lee to get out of the truck"), with J.A. 119 (Davis testimony that Lee spoke first).

30

thus seems reasonably probable that, if properly instructed on the definition of heat of passion, a jury would conclude that Lee was guilty of manslaughter as opposed to second degree murder.

There remains the question of whether Lee pursued and stabbed Plummer a second time. But again, even assuming two stabbings, there is a reasonable probability that a jury would conclude that Lee was acting in the heat of passion for the duration of the fighting. The Virginia Supreme Court stated that there was "credible evidence to support" a defendant's theory of voluntary manslaughter resulting from provocation and heat of passion in Crockett v. Commonwealth, 47 S.E.2d 377, 382 (Va. 1946). There, the deceased beat the defendant with his fists and with a bottle of gin during the course of a card game. Id. at 379. Three hours later, the defendant sought out the deceased and shot him in the chest. Id. The Commonwealth argued that sufficient time had elapsed for the defendant's blood to cool, whereas the defendant argued that he shot the deceased in the heat of passion. Id. at 381-82. The Virginia Supreme Court observed that, based on the facts, it was error to give the jury instructions pertaining only to the Commonwealth's theory that the defendant's blood had cooled before the shooting. Id. at 381. Rather, the jury should have also been given an instruction that supported the defendant's theory that

31

the he was operating in the heat of passion when he shot the deceased. Id. at 381-82. Here, too, there is credible evidence that Lee was acting in the heat of passion, and there is a reasonable probability that a jury would so conclude if properly instructed. See McClung, 212 S.E.2d at 293 (finding that jury could have concluded that defendant acted in heat of passion where jury "could have concluded that the 'cooling time' was less than half an hour").

We note finally that a verdict of manslaughter would have resulted in a substantially shorter sentence. Under Virginia law, second degree murder is punishable by a maximum of forty years in prison. Va. Code § 18.2-32. By contrast, manslaughter is a Class 5 Felony punishable by a maximum of ten years in prison. Va. Code §§ 18.2-35, 18.2-10(e). Here, Lee was sentenced to the maximum term for second degree murder. Because there is a reasonable probability that the jury would have found Lee guilty only of manslaughter, he would have received a sentence at least thirty years shorter. This difference in the applicable sentences is undoubtedly prejudicial. See Glover v. United States, 531 U.S. 198, 202-04 (2001) (holding that Sixth Amendment prejudice resulted from an unasserted error that added six to twenty-one months to the defendant's sentence).

In sum, the trial court should have given the heat of passion instruction if asked. Trial counsel's inadequate

32

discussion of heat of passion during closing argument did not cure the lack of instruction.  Under the law of Virginia, the undisputed facts here present a reasonable probability that the outcome of Lee's trial would have been different if the heat of passion instruction had been given, and we therefore find that Lee was prejudiced by his trial counsel's failure to request the heat of passion instruction.

IV.

For the foregoing reasons, we find that the state habeas court's denial of Lee's ineffective assistance claim was based on an unreasonable application of clearly established federal law set forth in <u>Strickland</u> and its progeny, even when viewed through the additional lens of AEDPA.  Specifically, given the undisputed facts presented at Lee's trial, the state habeas court erred in disregarding the prejudice created by the omission of a jury instruction defining heat of passion.  The district court's order is therefore reversed, and this case is remanded with instructions to issue Lee a writ of habeas corpus unless the Commonwealth of Virginia endeavors to prosecute him in a new trial within ninety days.

<u>REVERSED AND REMANDED</u>

33