THACKER, Circuit Judge,
dissenting:
“Jurors are not experts in legal principles; to function effectively, and justly, they must be accurately instructed in the law.” Carter v. Kentucky, 450 U.S. 288, 302, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981). In this case, South Carolina’s alibi instruction would have educated the jurors that the State was required to disprove Maurice Hope’s alibi defense in order to convict him. I believe there is a “reasonable probability” that the outcome of Hope’s trial would have been different had counsel requested the instruction. Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Therefore, I also believe the South Carolina post-conviction review (“PCR”) court unreasonably applied Strickland in concluding to the contrary. See 28 U.S.C. § 2254(d)(1). I respectfully dissent.
I.
For purposes of the prejudice prong of a Sixth Amendment ineffective assistance of counsel claim, a reasonable probability is “a probability sufficient to undermine confidence in the outcome” of the trial. Wiggins v. Smith, 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. *527 2052). We ask whether it is “ ‘reasonably likely the result would have been different”; that is, the “likelihood of a different result must be substantial, not just conceivable.” Harrington v. Richter, 562 U.S. 86, 111-12, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (quoting Strickland, 466 U.S. at 696, 104 S.Ct. 2052).
A.
The Supreme Court has established that, where a particular legal precept is sufficiently fundamental to the defendant’s case in a criminal trial, a court may not simply assume that jurors will intuit or deduce that precept from an incomplete or corollary instruction.
The Court has long emphasized that the government has the burden to prove “every fact necessary to constitute the crime with which he is charged,” In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and the accused shall not have the initial burden as to any of these facts, see Sandstrom v. Montana, 442 U.S. 510, 523, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (noting the “overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime” (quoting Morissette v. United States, 342 U.S. 246, 275, 72 S.Ct. 240, 96 L.Ed. 288 (1952))). This principle is not simply a “trial ritual”; it is a “fundamental ... substantive constitutional standard” that a factfinder is “require[d] [to] rationally apply ... to the facts in evidence.” Jackson v. Virginia, 443 U.S. 307, 316-17, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Following Winship, the Supreme Court recognized the importance of accurate, explicit, and complete jury instructions where laymen are required to understand the government’s burden. In Taylor v. Kentucky, despite defense counsel’s request, a state trial court refused to give an instruction on the presumption of innocence but did give an instruction on reasonable doubt. See 436 U.S. 478, 480-81, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978). In reversing the defendant’s robbery conviction, the Court noted, “While the legal scholar may understand that the presumption of innocence and the prosecution’s burden of proof are logically similar, the ordinary citizen well may draw significant additional guidance from an instruction on the presumption of innocence.” Id. at 484, 98 S.Ct. 1930. Thus, even though one may be an “implied corollary” to the other, the presumption of innocence instruction “conveys for the jury a special and additional caution” and was therefore required to be given. Id. at 485, 98 S.Ct. 1930 (internal quotation marks omitted). Additionally, in Carter v. Kentucky, the Court held that a state trial judge has a constitutional obligation, upon counsel’s request, to give an instruction that a defendant’s desire not to testify “cannot be used as an inference of guilt and should not prejudice him in any way.” 450 U.S. 288, 289, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981) (internal quotation marks omitted). The Court explained, “Jurors are not experts in legal principles; to function effectively, and justly, they must be accurately instructed in the law.” Id. at 302, 101 S.Ct. 1112. These decisions highlight the Court’s dictate for accurate and plenary legal instruction, especially in the face of the legal complexities of presumptions and burdens of proof.
Against this backdrop, this court has found “constitutionally infirm” a jury instruction placing the burden of proving an alibi defense on the defendant. Fulton v. Warden, Md. Penitentiary, 744 F.2d 1026, 1031 (4th Cir. 1984) (citing Winship, 397 U.S. at 364, 90 S.Ct. 1068); see also Frye v. Procunier, 746 F.2d 1011, 1013 (4th Cir. 1984) (Alibi is “not an affirmative defense since it negates every fact that the state is *528 required to prove. Therefore no burden of persuasion could be placed upon the defendant to prove alibi to the jury’s satisfaction”).
B.
Here, the trial court’s jury instructions failed to give the jury a complete understanding of the State’s burden. As the majority acknowledges, in defending himself, Hope’s sole defense was an alibi defense. Per South' Carolina law, the alibi instruction that the court would have given provides:
The defendant in this case has raised a defense of alibi. That means the defendant was not at the scene of the crime at the time it was committed, but was elsewhere and had nothing to do with it. The word “alibi” means “elsewhere.”
There is no burden upon the defendant to prove that he was not at the scene of the crime. There is no burden upon the defendant to prove his alibi. The defendant need not prove he was somewhere else.
The burden is on the State to prove beyond a reasonable doubt that the defendant was present at the scene of the crime, actually participated in the crime, and was not somewhere else. Thus, the State has the burden of proving beyond a reasonable doubt that the defendant was present and committed the crime. The State has the burden of disproving the defendant’s alibi defense.
J.A. 521 n.6 (emphases supplied) (quoting Anderson, S.C. Requests to Charge— Criminal § 6-19 (2012));[1] see also Roseboro v. State, 317 S.C. 292, 454 S.E.2d 312, 313 (1995) (“An alibi charge places no burden on a criminal defendant but emphasizes that it is the State’s burden to prove the defendant was present and participated in the crime.”). Significantly, South Carolina finds this instruction to be fundamental in alibi evidence cases. Indeed, per black letter South Carolina law, where the defendant presents evidence that he was at a different place at the time of the crime, the failure of trial counsel to request the alibi instruction is considered deficient representation, see Ford v. State, 314 S.C. 245, 442 S.E.2d 604, 606 (1994), and the failure of a trial court to give it upon request, where the evidence supports such charge, is reversible error, see State v. Burriss, 334 S.C. 256, 513 S.E.2d 104, 108 (1999) (“[I]f any evidence exists to support a charge, it should be given.”); see also United States v. Hicks, 748 F.2d 854, 857 (4th Cir. 1984).
To make matters worse, the trial court in this case strongly suggested that its instructions were the complete body of law to be applied. See J.A. 278-79 (“I’m the sole judge of the law in this ease and you must take, accept, and apply the law as I charge it and I remind you this is true even if you think I charge the law in error or even if you think the law should be different. Your oath requires you to take, accept, and apply the law as I charge it.”). In light of these remarks, “the absence of a charge on alibi” can give “rise to a conclusion by the jury that it was impermissible for them to consider alibi as a defense.” Riddle v. State, 308 S.C. 361, 418 S.E.2d 308, 310 (1992).
This court granted relief under § 2254(d)(1) in a similar situation based on an unreasonable application of Strickland. In Lee v. Clarke, a state prisoner argued that counsel contravened Strickland by failing to request a heat of passion jury instruction at his state murder trial. See 781 F.3d 114, 116 (4th Cir. 2015). The trial court instructed the jury that second de *529 gree murder requires malice, and “[m]al-ice may result from any unlawful or unjustifiable motive including anger, hatred or revenge,” or “may be inferred from any deliberate willful and cruel act against another, however sudden.” Id. at 119. It also told the jury, “[If] the killing was committed while in the sudden heat of passion upon reasonable provocation,” then the defendant would be guilty of the lesser offense of voluntary manslaughter. Id. (alterations and internal quotation marks omitted). However, counsel failed to request the Virginia pattern jury instruction explaining, “Heat of passion excludes malice when that heat of passion arises from provocation that reasonably produces an emotional state of mind such as hot blood, rage, anger, resentment, terror or fear.... ” Id. at 120 (emphasis supplied). Although Lee argued that he acted in the heat of passion from provocation, he was nonetheless convicted of second degree murder. See id. at 121.
We reversed the district court’s denial of habeas relief, finding prejudice under the second prong of Strickland. We explained “the jury was given to understand anger, hatred or revenge as exclusively unlawful or unjustifiable motives,” and was not instructed that “heat of passion and malice can arise from similar emotions.” Id. at 126-27 (emphasis in original) (alteration and internal quotation marks omitted). Thus, because “the [state habeas] court failed to appreciate the prejudice inherent in the absence of’ the proper jury instruction, it unreasonably applied Strickland. Id. at 116; see also United States v. Luck, 611 F.3d 183, 189-190 (4th Cir. 2010) (concluding that counsel’s failure to request an informant instruction in drug conspiracy amounted to Strickland prejudice, even though the court gave a witness credibility instruction, because the “jury was not cautioned to consider the special problems of credibility posed by the government’s paid informants,” and “the [informant] instruction more effectively cautions the jurors to think closely about the testimony”). Like Lee and Luck, the incomplete and corollary instructions given at Hope’s trial simply could not serve as a constitutional substitute.
The majority reasons, however, that because the trial court gave other instructions on the presumption of innocence, the State’s burden to prove each element beyond a reasonable doubt, and the necessity of judging and weighing the credibility of the witnesses, there is no resulting prejudice. It states, “Plainly, the jury could not have found Hope guilty of any offense if any juror did not believe beyond a reasonable doubt that he was present during the robbery.” Ante at 524. This statement, while arguably true, assumes too much. Critically, what the jurors plainly did not know in this case was that the testimony of Hope’s roommates, even if not proven beyond a reasonable doubt by Hope, “need only raise a reasonable doubt in their minds that [Hope] was present at the crime scene.” United States v. Alston, 551 F.2d 315, 319 (D.C. Cir. 1976) (footnote omitted). In other words, even if the jury believed Hope’s roommates with some degree of certainty, that belief alone could raise a reasonable doubt that he was at the scene of the crime. The instructions given by the trial court made absolutely no mention of how to weigh those competing concerns; therefore, the jurors did not know the State had to disprove Hope’s alibi evidence, or that Hope did not have the burden of proving his whereabouts beyond a reasonable doubt. In my view, without proper guidance from the trial court, it is substantially unlikely that a jury would have intuited the appropriate way to assess this evidence.
C.
Moreover, where a jury verdict is “only weakly supported by the recordf, it] is *530 more likely to have been affected by errors than one with overwhelming record support.” Strickland, 466 U.S. at 696, 104 S.Ct. 2052. And where, like here, a trial is “essentially ... a swearing contest” with “skeletal instructions” and the risk of “harmful inferences,” there is a “heightened” risk that incomplete jury instructions will affect the outcome of a trial. Taylor, 436 U.S. at 487-88, 98 S.Ct. 1930.1 believe the State’s record evidence in this case was incredibly weak, and I disagree with the majority’s representations to the contrary. See ante at 525-26.
The only State witnesses who positively identified Hope as committing the robbery were Corey Spruell and Jarrod Heath. They were hardly disinterested, honest witnesses; their testimony was riddled with material inconsistencies and traded for dismissed charges and lighter sentences. See, e.g., J.A. 269 (State conceding at closing that Spruell “right up until the end denied having a gun. Obviously lied. He obviously lied about that. I don’t know why.”); id. at 133 (Heath admitted that he “ehange[d] [his] story” about whether or not Spruell had a gun); id. at 126 (Heath acknowledging he lied about the money he received for being the getaway driver); id. at 116-17 (Spruell acknowledging he is testifying pursuant to a plea bargain deal); id. at 125 (same for Heath).
Bi-Lo employees testified that two robbers, both with ski masks and guns, entered the store that morning. One of them jumped over the counter to retrieve money from the cash office, and the other held up the store manager and other employees with his gun. Both Heath and Spruell testified that Spruell was the one who jumped over the counter, and employees described the other suspect as anywhere from 180 to 200 pounds and 5’8” to 510” tall. Hope, however, was as much as 50 to 70 pounds heavier and six feet tall. In the end, the district court found “there was nobody at the grocery store (aside from Spruell and Heath) who could identify Petitioner as one of the robbers.” J.A. 523 n.7 (alteration and internal citations omitted). There were no fingerprints, no DNA evidence, and no other corroborating witnesses for identification purposes. And, despite the majority’s reliance on the corroborative effect of the surveillance video, it fails to mention the video was inconclusive as to the identity of the robbers. See ante at 521. The PCR court found that the videotape “showed a person which very closely resembled [Hope].” J.A. 378. But it appears this statement was based on a representation made by PCR counsel that the video “showed a form of a person from behind that certainly would have matched Mr.Hope’s build and description,” but also “would ... have matched many other people his size and shape.” Id. at 359. Despite the lack of evidence directly supporting the PCR court’s finding, the magistrate judge then took the unwarranted follow-on step of stating that the video “showed the petitioner (or an individual who, coincidentally, looked remarkably similar to the petitioner).” Id. at 491. Therefore, I would further conclude the PCR court made an unreasonable determination of fact on this point that was further exacerbated by the magistrate judge. See 28 U.S.C. § 2254(d)(2). Finally, the wallet found in Heath’s ear is of little probative value, as Hope was undisputedly in Heath’s car a week before the robbery.
On the other hand, the testimony from Hope’s roommates (who did not have an incentive to perjure themselves as did Spruell and Heath) painted a detailed and candid account of the morning of the robbery, and the majority’s potential credibility concerns as to Hope’s roommates only serves to underscore the importance of an alibi jury instruction. See ante at 525 n.4. The jurors did not understand that any *531 discrepancies or ulterior motives gleaned from Hope’s roommates’ story should not render his defense an outright failure; rather, they were required to decide whether the State, in light of these discrepancies, disproved the testimony of the roommates beyond a reasonable doubt.
For these reasons, the PCR court “failed to appreciate the prejudice inherent in the absence of’ the proper alibi jury instruction; therefore, it unreasonably applied Strickland, and Hope should be accorded relief under § 2254(d)(1). Lee, 781 F.3d at 116.[2]
II.
When asked to describe a situation in which, on federal habeas review, Strickland prejudice could flow from counsel’s failure to request an alibi defense, the State explained, “That would be in a situation where ... the state’s case is a weak case,” Oral Argument at 31:07-31:27, Hope v. Cartledge, No. 15-7367, http://coop.ca4. uscourts.gov/OAarehive/mp3/15-7367-20170321.mp3 (4th Cir. March 21, 2017), and
where ... not having the [alibi] instruction would ... have caused an issue for the jury in knowing what the state’s burden was, and whether or not the defendant had a burden of showing anything in regards to the alibi.
Id. at 33:46-34:02. In my opinion, the State described precisely this case. Therefore, I respectfully dissent.

. Citations to the "J.A.” refer to the Joint Appendix filed by the parties in this appeal.

. The majority also cites Gibbs v. State, 403 S.C. 484, 744 S.E.2d 170 (2013), and Ford v. State, 314 S.C. 245, 442 S.E.2d 604 (1994), which held that defense counsel did not prejudice the defendant when they failed to request an alibi instruction. See ante at 524 n.3. First, however, in the § 2254(d)(1) context, state court decisions interpreting federal constitutional rights are not binding on us. See Williams v. Taylor, 529 U.S. 362, 409-10, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In any event, these cases are distinguishable. In Ford, the alibi was contradicted by “overwhelming evidence,” including DNA evidence, indicating the defendant was at the scene of the crime. Ford, 442 S.E.2d at 606. We do not have such overwhelming evidence here. In Gibbs, the jury received a lengthy identification charge, which repeatedly explained that the State had the burden to prove the “identity” of the criminal beyond a reasonable doubt. 744 S.E.2d at 176. We had no identification charge here.