**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-7082**

CLIFTON L. COLLINS,

                Petitioner - Appellant,

        v.

HAROLD W. CLARKE, Director, Virginia Department of
Corrections,

                Respondent - Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond.    John A. Gibney, Jr.,
District Judge. (3:13-cv-00763-JAG)

Argued: December 9, 2015           Decided: March 22, 2016

Before KING, SHEDD, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** David Bernard Hargett, HARGETT LAW, PLC, Glen Allen,
Virginia; James T. Maloney, JAMES T. MALONEY, PC, Richmond,
Virginia, for Appellant.  Donald Eldridge Jeffrey, III, OFFICE
OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for
Appellee.  **ON BRIEF:** Mark R. Herring, Attorney General of
Virginia, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond,
Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Clifton L. Collins ("Appellant") appeals the district court's order dismissing his petition for a writ of habeas corpus, in which he challenges his convictions for attempted abduction and use of a firearm in the commission of a felony. The district court determined that none of Appellant's claims merit relief.

We granted a certificate of appealability on two of Appellant's claims that alleged ineffective assistance of counsel. Because Appellant has not demonstrated counsel's alleged errors prejudiced him, however, we affirm the dismissal of Appellant's petition on the grounds explained below.

I.

A.

Appellant was a bail bondsman licensed in North Carolina. In 2006, Appellant posted bond for a criminal defendant, James Sydnor ("Sydnor"). Sydnor failed to appear in a North Carolina court as required, in violation of his bond.

Upon learning that Sydnor would be attending a funeral in Mecklenburg County, Virginia, Appellant traveled to Virginia in March 2007 with the intent to apprehend Sydnor. Appellant was not licensed as either a bail bondsman or bail enforcement agent in Virginia. When he arrived in Mecklenburg County, Appellant sought the assistance of the local deputy sheriff in

arresting Sydnor. However, the sheriff's department declined to get involved in the absence of an extradition request from North Carolina.

At the funeral, Appellant approached Cleveland Spruill ("Spruill"), who Appellant thought was Sydnor. In fact, Spruill was Sydnor's cousin who had a familial resemblance to Sydnor. Appellant blocked Spruill's car with his truck and advanced toward him. Appellant pointed a gun at Spruill and muttered, "I believe you see what it is motherfuck." J.A. 103;[1] see also Collins v. Commonwealth, 720 S.E.2d 530, 531 (Va. 2012). Assuming that he was being robbed, Spruill stated that he had no money, to which Appellant responded, "[T]his ain't about money." J.A. 103; Collins, 720 S.E.2d at 531.

Appellant then grabbed Spruill's shoulder and pulled him toward the truck. Appellant asked Spruill for identification, and Spruill showed Appellant his driver's license, which confirmed that he was not Sydnor. At that point, Appellant immediately drove off, and Spruill reported the incident to local law enforcement.

The State of Virginia charged Appellant with attempted abduction and use of a firearm in the commission of attempted

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

3

abduction. Following a bench trial, the state court adjudged Appellant guilty of attempted abduction pursuant to sections 18.2-26 and 18.2-47 of the Code of Virginia, and use of a firearm in the commission of a felony pursuant to section 18.2-53.1 of the Code of Virginia. Appellant was sentenced to a term of five years of imprisonment on the attempted abduction charge, all suspended, and to the mandatory term of three years of imprisonment on the firearm charge. On February 11, 2015, Appellant finished serving his term of imprisonment, yet the five suspended years remain outstanding.

B.

Appellant appealed his convictions to the Court of Appeals of Virginia and the Supreme Court of Virginia. On direct appeal, Appellant raised two arguments: (1) he had the legal authority under federal common law to attempt to seize Sydnor, see Taylor v. Taintor, 83 U.S. 366 (1872) ("When bail is given, the [surety] . . . . may pursue [the principal] into another State . . . ."); and (2) he did not have the specific intent to abduct the victim, Spruill, because but for a mistake of fact, he believed he was seizing Sydnor. Both courts upheld his convictions. See Collins v. Com., 702 S.E.2d 267 (Va. Ct. App. 2010), aff'd, 720 S.E.2d 530 (Va. 2012). As to the first argument, Appellant contended that he had legal justification to act as an out-of-state bail bondsman under Taylor. But the

4

Supreme Court of Virginia concluded that, by the enactment of Article 11 (bail bondsmen) and Article 12 (bail enforcement agents) of Chapter 1, Title 9.1 of the Code of Virginia (collectively, "bail bondsman statutes"),[2] the Virginia state legislature abrogated the federal common law right set forth in Taylor. See Collins v. Com., 720 S.E.2d 530 (Va. 2012).

Appellant then filed a state habeas corpus petition with the Supreme Court of Virginia. There, he raised five claims: (1) the evidence at trial was insufficient to prove his intent to abduct the victim; (2) he was denied due process because of the retroactive application of the court's construction of Virginia's bail bondsman statute; (3) his counsel was ineffective for failing to raise this due process right; (4) he was denied due process because he lacked the requisite intent to commit abduction; and (5) his counsel was

---

[2] A "bail bondsman" is defined as "any person who is licensed by the Department [of Criminal Justice Services] who engages in the business of bail bonding and is thereby authorized to conduct business in all courts of the Commonwealth." Va. Code Ann. § 9.1-185. Bail enforcement agents/bounty hunters are "any individual[s] engaged in bail recovery." Va. Code Ann. § 9.1-186. A nonresident applicant for a bail bondsman license or bail enforcement license must meet the same licensing requirements as a resident. See Va. Code Ann. §§ 9.1-186.2(B), -186.7. Pursuant to sections 9.1-185.18 and -186.13 of the Code of Virginia, a person commits a Class 1 misdemeanor by engaging "in bail bonding for profit or other consideration without a valid license issued by the Department [of Criminal Justice Services] in this Commonwealth." Va. Code Ann. §§ 9.1-185.18, -186.13.

5

ineffective for failing to preserve this argument that Appellant lacked specific intent to commit abduction.

The Virginia court held that the first claim was barred from review in a habeas corpus petition. See Collins v. Clarke, No. 130099, slip op. at 2 (Va. 2013). Next, the court held that Appellant's two due process claims were not preserved at trial and were, therefore, barred from review. See id. at 2-3. Finally, the Supreme Court of Virginia found that the two ineffective assistance claims satisfied neither prong of Strickland v. Washington, 466 U.S. 668 (1984). See id. at 3-4.

Appellant timely filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 2254, raising the following five claims:

> (1) Appellant had a legal justification or excuse for his actions because he was acting as a bail bondsman or bail enforcement agent licensed in North Carolina pursuant to his common law right to recover a principal who violated a bail contract, which right was not expressly abrogated by Virginia statute, and he had contacted local law enforcement before proceeding to secure the fugitive and was given express or implied permission;
>
> (2) The state appellate courts denied Appellant's right to due process by retroactively applying Virginia statutory licensing requirements on bail bondsmen to limit his common law rights;
>
> (3) Appellant's counsel was ineffective in failing to argue that the retroactive

6

application of the licensing requirements violated his due process rights;

(4) Appellant's conviction violated due process because he lacked the requisite intent to commit abduction;

and

(5) Appellant's counsel was ineffective in failing to argue that Appellant lacked the specific intent to commit abduction.

The district court granted the Government's motion to dismiss, relying primarily on the reasons articulated in the decisions by the Supreme Court of Virginia. See Collins v. Clarke, No. 3:13-cv-00763-JAG, 2014 WL 2777438 (E.D. Va. June 19, 2014). The district court concluded that the retroactivity and requisite intent arguments were precluded from review because they were not preserved at trial. See id. at *4-5. Additionally, the district court concluded that the legal determinations by the Supreme Court of Virginia -- that the Virginia legislature abrogated the federal common law right of out-of-state bail bondsman to apprehend fugitive bailees, and no ineffective assistance existed -- were reasonable. See id. at *3, 6-7.

In July 2014, Appellant timely noticed his appeal. We issued a certificate of appealability on only two of his claims:

(1) Whether [Appellant's] trial counsel was ineffective in failing to preserve for appeal the issue of whether the retroactive application of Virginia statutory licensing

7

requirements to limit his common law rights as a bail bondsmen violated his right to due process; and

(2) Whether [Appellant's] counsel was ineffective in failing to argue at trial and on appeal that [Appellant] lacked the requisite intent to commit an abduction.

Order at 1, Collins v. Clarke, No. 14-7082 (4th Cir. Feb. 10, 2015), ECF No. 13.

II.

We review de novo a district court's denial of habeas relief. See Lee v. Clarke, 781 F.3d 114, 122 (4th Cir. 2015).

Appellant filed his habeas petition pursuant to the Antiterrorism Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d)(1), which provides,

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1).

"[A]n unreasonable application of federal law is different from an incorrect application of federal law." Williams v. Taylor, 529 U.S. 362, 410 (2000). Thus, "a federal

8

habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. In determining whether it was an "unreasonable application," we inquire as to whether it was "objectively unreasonable." Id. at 409 (internal quotation marks omitted). "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (internal citations and quotation marks omitted).

To prevail on an ineffective assistance of counsel claim, Appellant must establish that his counsel's performance was both deficient and that it prejudiced the outcome. See Strickland, 466 U.S. at 687-88 (stating that one must show counsel's conduct "fell below an objective standard of reasonableness," and "the deficient performance prejudiced the defense"). In analyzing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotation marks omitted). There is a strong presumption that counsel "rendered adequate

9

assistance and made all significant decisions in the exercise of reasonable professional judgment." Cullen, 131 S. Ct. at 1403 (quoting Strickland, 466 U.S. at 690).

Even if counsel's performance was deficient, Appellant must still show prejudice. To do so, Appellant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." Id. Additionally, "[i]n cases where a conviction has been the result of a trial, the defendant must demonstrate that but for counsel's errors, there is a reasonable probability that he would not have been convicted." Lee, 781 F.3d at 122-23 (alteration in original) (internal quotation marks omitted). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

Lastly, when an appellant raises a claim of ineffective assistance of counsel, "[t]he AEDPA standard and the Strickland standard are dual and overlapping, and we apply the two standards simultaneously rather than sequentially." Lee, 781 F.3d at 123 (alteration in original) (quoting Richardson v. Branker, 668 F.3d 128, 139 (4th Cir. 2012)). "Because both

standards of review are highly deferential to the state court's adjudication . . ., when the two apply in tandem, the review is doubly so."  Id. (alteration in original) (internal quotation marks omitted).

### III.

Appellant asserts that the Supreme Court of Virginia erroneously applied Strickland v. Washington, 466 U.S. 668 (1984), because it was unreasonable to conclude that Appellant's counsel was not deficient or that Appellant did not suffer prejudice when retroactive application of the bail bondsman statutes or the lack of requisite intent could have excused his actions.  We address each issue in turn.

### A.

Appellant first argues that the federal common law established in Taylor v. Taintor, 83 U.S. 366 (1872), validates his conduct here.  See id. at 371 ("When bail is given, the [surety] . . . .  may pursue [the principal] into another State . . . .").  Against this federal common law backdrop, Appellant contends that his counsel was ineffective in failing to preserve for appeal the issue of whether the retroactive application of the Virginia bail bondsman statutes abrogated Appellant's common law rights as a bail bondsman.  Even if Appellant's counsel was deficient in this regard, however, Appellant's argument falters at the second prong of the Strickland analysis -- that is,

11

Appellant cannot demonstrate that but for counsel's alleged errors, the result of Appellant's proceedings would have been different. See Lee v. Clarke, 781 F.3d 114, 122-23 (4th Cir. 2015); see also Strickland, 466 U.S. at 697.

First, to the extent that Appellant challenges whether the bail bondsman statutes abrogated Taylor, that decision is best left to Virginia. See Appellant's Br. 13-19. As the Supreme Court has made clear, "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Instead, we limit our review only to the due process concerns set forth in the certificate of appealability. See United States v. Linder, 561 F.3d 339, 344 n.6 (4th Cir. 2009); see also Order at 1, Collins v. Clarke, No. 14-7082 (4th Cir. Feb. 10, 2015), ECF No. 13. Yet, because Appellant's ineffective assistance of counsel argument relates to the retroactive application of the bail bondsman statutes, we cannot ignore the interplay of Taylor and Virginia law.

In support of his argument that his counsel should have preserved the claim that the Virginia Supreme Court's retroactive application of the bail bondsman statutes denied him due process, Appellant relies on Bouie v. City of Columbia, 378

12

U.S. 347 (1964).  In that case, the Supreme Court held, "If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect."  Bouie, 378 U.S. at 354 (internal quotation marks omitted).  To prevail on a Bouie claim, Appellant must establish that the Virginia bail bondsman statutes were "vague" or that there was "an unforeseeable and retroactive judicial expansion of statutory language that appears narrow and precise on its face."  Rogers v. Tennessee, 532 U.S. 451, 457 (2001).  Here, Appellant contends only the latter.  Appellant argues that the revocation of the out-of-state bail bondsman's common law right to apprehend a fugitive was not clear at the time of the conduct giving rise to his convictions.  Rather, he asserts that such revocation of the federal common law was made clear for the first time by the Virginia court rulings in his case.  This argument is unavailing, and we conclude that the Supreme Court of Virginia's decision was reasonable.

1.

First, the bail bondsman statutes were enacted in 2004, three years prior to Appellant's conduct at issue.  The Supreme Court of Virginia concluded that there was no judicial expansion of the bail bondsman statutes that would have made the

13

application of the laws unforeseeable in the circumstance at hand.

> We cannot perceive how the General Assembly could have more plainly manifested its intent to abrogate the long standing common law rule allowing out-of-state bail bondsmen and bounty hunters to enter Virginia to apprehend fugitive bailees. It is inconceivable that the General Assembly intended to impose such strict requirements upon in-state bail bondsmen and bounty hunters as those enacted as a result of the Crime Commission report, yet intended to leave out-of-staters with the unfettered right to enter Virginia and apprehend fugitive bailees without being subject to regulation.

Collins v. Commonwealth, 720 S.E.2d 530, 533 (Va. 2012).

This determination is not unreasonable. The bail bondsman statutes are unambiguous, and Appellant had fair notice of what was required under the law. The retroactivity principle is grounded in the requirement that a criminal statute afford "a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." United States v. Harriss, 347 U.S. 612, 617 (1954). The Supreme Court has consistently recognized "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." United States v. Lanier, 520 U.S. 259, 266 (1997). In order to determine whether the bail bondsman statutes afford fair notice of the court's

14

statutory interpretation, we look to the language of the statute and to judicial interpretation of it. See Bouie, 378 U.S. at 354.

As noted, the bail bondsman statutes were enacted in 2004 by the Virginia General Assembly, nearly three years prior to Appellant's 2007 conduct. See Va. Code Ann. §§ 9.1–185 to -185.18, -186 to -186.14. Pursuant to section 9.1–185.18 of the Code of Virginia, a person commits a Class 1 misdemeanor by engaging "in bail bonding for profit or other consideration without a valid license issued by the Department [of Criminal Justice Services] in this Commonwealth." Va. Code Ann. § 9.1-185.18. The Criminal Justice Services Board ("Board") establishes licensing qualifications to "ensure respectable, responsible, safe and effective bail enforcement within the Commonwealth," including a requirement that a nonresident applicant for a bail enforcement license must meet the same licensing requirements as a resident. Va. Code Ann. §§ 9.1-186.2(B), -186.7. The Department of Criminal Justice Services issues the licenses, in conjunction with the regulations established by the Board. See Va. Code Ann. §§ 9.1-186.3, -186.5, -186.6(A).

Considering that bail bondsmen, who are licensed in Virginia pursuant to section 9.1-185, and "licensed bail enforcement agent[s]" are the only people expressly permitted

15

"at any time" to seize their bailees within the Commonwealth, the legislation expressly provides that only people licensed by the Commonwealth could engage in bail recovery. Va. Code Ann. § 19.2-149. Therefore, given that the bail bondsman statutes clearly dictate the necessary elements for legally engaging in bail bonding activities in Virginia, we cannot embrace Appellant's argument that he did not have fair notice that his actions were illegal under Virginia law.

2.

Additionally, trends in other jurisdictions are relevant to determine whether the new rule is "to be unexpected and indefensible." Rogers, 532 U.S. at 464. Numerous jurisdictions have addressed the interaction between state statutes regulating bail bondsmen and common law bail bondsmen rights and have concluded that the state regulations abrogate conflicting common law rights. See, e.g., Lund v. Seneca County Sheriff's Dep't, 230 F.3d 196, 198 (6th Cir. 2000); Ouzts v. Maryland Nat'l Ins. Co., 505 F.2d 547, 551–53 (9th Cir. 1974) (en banc); Moncrief v. State Comm'r of Ins., 415 So.2d 785, 788 (Fla. Dist. Ct. App. 1982); Walker v. Commonwealth, 127 S.W.3d 596, 606 (Ky. 2004); Commonwealth v. Wilkinson, 613 N.E.2d 914, 917 (Mass. 1993); State v. Epps, 585 P.2d 425, 429 (Or. Ct. App. 1978); Green v. State, 829 S.W.2d 222, 223 (Tex. Crim. App. 1992). That the Virginia court's decision adhered to this trend

16

is to be expected. An unsurprising conclusion about a clearly drafted statute is not the "unforeseeable . . . judicial expansion of statutory language" contemplated by <u>Bouie</u>. <u>Rogers</u>, 532 U.S. at 457.

3.

In sum, Appellant's <u>Bouie</u> due process argument stood little chance of success even if it had been properly preserved. We agree with the Supreme Court of Virginia that, assuming that the conduct of Appellant's counsel was deficient, such deficiency did not prejudice Appellant. Therefore, we conclude the court's application of <u>Strickland</u> with regard to this contention was reasonable.

B.

Next, Appellant contends that the Supreme Court of Virginia unreasonably rejected his argument that his counsel was ineffective for failing to argue that Appellant "possessed intent only to support a conviction for acting as a bail recovery agent without a license," but not the specific intent to commit abduction. Appellant's Br. 30. Appellant argues the alleged abduction was merely incidental to his unlicensed bail bonding activities. Appellant's argument is tenuous, at best.

Pursuant to section 18.2-47 of the Code of Virginia, a person is guilty of abduction when he "by force, intimidation or deception, and without legal justification or excuse, seizes,

17

takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge." Va. Code Ann. § 18.2-47.

When "an offense consist[s] of an act combined with a particular intent, proof of such intent is as necessary as proof of the act itself and must be established as a matter of fact." Ridley v. Commonwealth, 252 S.E.2d 313, 314 (Va. 1979). "Intent in fact is the purpose formed in a person's mind and may be, and frequently is, shown by circumstances[,] . . . which may be shown by a person's conduct or by his statements." Hargrave v. Commonwealth, 201 S.E.2d 597, 598 (Va. 1974). The Supreme Court of Virginia has opined,

> The specific intent to commit [the crime] may be inferred from the conduct of the accused if such intent flows naturally from the conduct proven. Where the conduct of the accused under the circumstances involved points with reasonable certainty to a specific intent to commit [the crime], the intent element is established.

Wilson v. Commonwealth, 452 S.E.2d 669, 674 (Va. 1995) (citations omitted). "[W]hether the required intent exists is generally a question for the trier of fact." Nobles v. Commonwealth, 238 S.E.2d 808, 810 (Va. 1977).

18

Here, it is clear that Appellant engaged in an attempted abduction of Spruill. The evidence presented at trial included Appellant's use of a firearm, force and threats, and intimidation to attempt to get another person into his waiting vehicle. These factors "all prove beyond a reasonable doubt that, without legal justification or excuse, [Appellant] seized another person with the intent to deprive such other person of his personal liberty." Collins, 720 S.E.2d at 534 (internal alterations and quotation marks omitted). Appellant's misguided belief that he was attempting to abduct his bailee, Sydnor, does not alter the equation.

In advancing his incidental conduct argument, Appellant relies on Brown v. Commonwealth, 337 S.E.2d 711 (Va. 1985), and Johnson v. Commonwealth, 275 S.E.2d 592 (Va. 1981), to contend that he lacked the requisite intent to commit the abduction. However, Brown is not applicable here. In Brown, the defendant was prosecuted for both abduction by detention and a crime that required restraint of a victim. Brown, 337 S.E.2d at 712. There, the defendant raised whether these charges constituted multiple punishments for the same offense in violation of the Double Jeopardy Clause. See id. at 712-13. The Brown court concluded,

> We hold . . . that one accused of abduction
> by detention and another crime involving
> restraint of the victim, both growing out of

19

> a continuing course of conduct, is subject upon conviction to separate penalties for separate offenses only when the detention committed in the act of abduction is separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime.

Id. at 713-14; see also Johnson, 275 S.E.2d 592 (finding no intent to abduct when defendant's restraint was only for furtherance of sexual advances). Here, Appellant raises neither a double jeopardy claim, nor an argument that the attempted abduction was intrinsic to the act of engaging as an unlicensed bail recovery agent. Pursuant to section 9.1-186 of the Code of Virginia,

> "Bail recovery" means an act whereby a person arrests a bailee with the object of surrendering the bailee to the appropriate court, jail, or police department, for the purpose of discharging the bailee's surety from liability on his bond. "Bail recovery" shall include investigating, surveilling or locating a bailee in preparation for an imminent arrest, with such object and for such purpose.

Va. Code Ann. § 9.1-186. Thus, by merely engaging in bail recovery acts -- i.e., pursuing or investigating a bailee in Virginia -- Appellant violated the licensure statute. This is so because even if no attempted abduction took place, Appellant was still in violation of the licensing requirements for engaging in bail recovery. Indeed, any licensure violation was already complete before his attempt to abduct Spruill began.

20

The mere fact that Appellant intended to deprive a different person of his liberty has no bearing on Appellant's intent to abduct some other individual or his intent to violate the licensure statute, and consequently, it was "separate and apart" from the offense of acting as an unlicensed bail recovery agent. Brown, 337 S.E.2d at 714.

Ultimately, even assuming arguendo that counsel was deficient, Appellant has not demonstrated that, but for counsel's alleged failure, the result of the proceeding would have been different. Accordingly, we cannot conclude the state court's application of Strickland was unreasonable.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

21